UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK W. MASON,

        Petitioner,                     Case Number 06-15476
                                                         Honorable David M. Lawson

v.

BLAINE LAFLER,

        Respondent,
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS**

        The petitioner, Derrick W. Mason, presently confined at the St. Louis Correctional Facility in St. Louis, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his convictions of first-degree premeditated murder, *see* Mich. Comp. Laws § 750.316A, and possession of a firearm during the commission of a felony, *see* Mich. Comp. Laws § 750.227b, following a jury trial in the Wayne county, Michigan circuit court. The petitioner was sentenced to life imprisonment without parole for the murder conviction and a consecutive two-year term for the firearm conviction. The petitioner alleges that there was insufficient evidence to convict him of first-degree premeditated murder and the trial court deprived him of due process by refusing to instruct the jury on the offense of voluntary manslaughter. The respondent has filed an answer to the petition, asserting that the claims lack merit. The Court agrees that the petitioner's claims are meritless and therefore will deny the petition.

I.

        The petitioner was convicted of shooting and killing Daryl Highsmith in Detroit, Michigan on October 27, 2003. The petitioner was a passenger in a car driven by one Samuel Pridgeon. Pridgeon was driving behind a car driven by a man identified in the petition as "Weezie." Pridgeon

was "doing stupid stuff behind [Weezie]." Trial Tr., Vol. II [dkt. # 9-10], at 89. Weezie then pulled over and got into a verbal altercation with Pridgeon and the petitioner. During the argument, Weezie threatened to "stomp" the petitioner. The petitioner and Pridgeon got into their vehicle and drove away from the scene of the altercation. However, they then decided to go over to a house where Weezie was visiting. The two men passed several times by the house that Weezie was visiting looking at the group of individuals congregating in front of the house. Then, the petitioner exited Pridgeon's car.

Approximately twenty minutes later, the petitioner, armed with an AK-47 assault rifle, ran around the corner by the house where Weezie and the other people were standing. The petitioner shouted at the group of people standing with Weezie, "Now what, Bitch," while pulling out the rifle. The petitioner then fired directly into the group standing in front of the house five or six times. Several witnesses identified the petitioner as the shooter. The victim, Daryl Highsmith, was shot in the head as he tried to run away. Highsmith died as a result of the gunshot wound. After the shooting, the petitioner attempted to avoid an arrest and refused to cooperate with the police until he was arrested by a fugitive task force.

The petitioner's counsel presented a defense of misidentification.

Before closing arguments, the trial court denied the petitioner's request that the jury be instructed on the lesser offense of voluntary manslaughter, although the jury was instructed on the lesser offense of second-degree murder.

The jury convicted the petitioner as charged, and his convictions were affirmed on appeal. *People v. Mason*, No. 255423 (Mich. Ct. App. Sept. 22, 2005); *lv. den.* 474 Mich. 895; 707 N.W.2d 201 (2005).

The petitioner now seeks a writ of habeas corpus on the following two grounds:

I. The prosecution failed to present sufficient evidence to support the petitioner's conviction of first-degree, premeditated murder in violation of due process of law under US Const. Am XIV; Mich. Const. Art 1, Sec 17;

II. The trial court denied petitioner due process and his right to a properly instructed jury by precluding an instruction on manslaughter; US Const. Am VI, XIV; Mich. Const. Art 1, Sec 17, 20.

Habeas Pet. at v. The respondent filed an answer contesting the merits.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the great writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)&(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be

presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11; *see also Knowles v. Mirzayance*, __ U.S. __, __, 129 S. Ct. 1411, 1419 (2009) (noting that the Supreme "Court has held on numerous occasions that it is not "'an unreasonable application

of clearly established Federal law'"' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

The petitioner first contends that there was insufficient evidence presented at trial to establish that he acted with premeditation and deliberation, which are necessary elements of first-degree premeditated murder.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16). "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434

(1983)). "The mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-89.

To convict a defendant of first-degree murder in Michigan, the prosecution must prove beyond reasonable doubt that the defendant intentionally killed the victim and that killing was deliberate and premeditated. *See People v. Youngblood*, 165 Mich. App. 381, 386-87, 418 N.W.2d 472, 475 (1988). "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v. Morrin*, 31 Mich. App. 301, 329, 187 N.W.2d 434, 449 (1971). Under Michigan law, while the minimum time required to premeditate "is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *People v. Vail*, 393 Mich. 460, 469, 227 N.W.2d 535, 539 (1975), *overruled on other grounds by People v. Graves*, 458 Mich. 476, 581 N.W.2d 229 (1998). "[A]n opportunity for a 'second look' may be merely seconds, minutes, or hours, dependant on the totality of the circumstances surrounding the killing." *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001) (citing *People v. Berthiaume*, 59 Mich. App. 451, 456, 229 N.W.2d 497 (1975)).

"The elements of premeditation and deliberation may be inferred from all the facts and circumstances surrounding the incident. . . ." *See People v. Haywood*, 209 Mich. App. 217, 229, 530 N.W.2d 497, 503 (1995). Premeditation may be established through evidence of the parties' prior relationship, the actions of the accused both before and after the killing, and the circumstances of the killing itself. *Ibid*. Premeditation and deliberation may also be inferred from the type of weapon used and the location of the wounds inflicted. *People v. Berry*, 198 Mich. App. 123, 128, 497 N.W.2d 202, 204 (1993). Use of a lethal weapon will support an inference of an intent to kill.

*Johnson*, 159 F. Supp. 2d at 596 (citing *People v. Turner*, 62 Mich. App. 467, 470, 233 N.W.2d 617, 619 (1975)).

In the present case, there was sufficient evidence presented at trial to show that the petitioner intended to kill the victim and that the killing was premeditated and deliberate. The Michigan Court of Appeals stated in its opinion that the evidence showed the petitioner returned to the scene of an earlier argument carrying an AK-47, an assault rifle. Between fifteen and twenty-five minutes elapsed between the time of the argument by the petitioner with Weezie and the petitioner's return to the scene. From approximately two houses away, the petitioner then raised the rifle, shouted "now what, Bitch," and fired between five and six shots at the group, which included Weezie, the man with whom the petitioner had recently argued. The victim was shot in the head while attempting to flee from the shooting and died later that day. *See People v. Mason*, No. 255423, slip. op. at *1-2,

The fifteen to twenty-five minute lapse of time, the petitioner's choice of an assault rifle as a weapon, the number of shots fired, and the location of the fatal wound suffered by the victim support a finding that the petitioner intended to kill the victim and that the killing was both premeditated and deliberate. In addition, the fact that the petitioner attempted to elude the police after the arrest also supports a finding of premeditation and deliberation. *See, e.g., Marsack v. Howes*, 300 F. Supp. 2d 483, 492 (E.D. Mich. 2004) (evidence of a flight following the commission of a crime relevant to finding intent to kill). Finally, under the doctrine of transferred intent, the petitioner could be liable for the victim's death even though he intended to kill Weezie. *See People v. Youngblood,* 165 Mich. App. at 388, 418 N.W. 2d at 475.

A reasonable trier of fact could have found beyond a reasonable doubt under the circumstances that the petitioner's decision to kill the victim was premeditated and deliberate. Therefore, the Michigan Court of Appeals' determination that there was sufficient evidence to support the petitioner's first-degree murder conviction was not an unreasonable application of clearly established federal law. The petitioner is not entitled to habeas relief on his first claim.

B.

The petitioner next contends that he was deprived of due process and a fair trial when the trial court refused to instruct the jury on the lesser offense of voluntary manslaughter. Under Michigan law, an intentional killing may amount to voluntary manslaughter if the perpetrator is "provoked." *Maher v. People*, 10 Mich. 212, 218-219 (1862); *see also People v. Townes*, 391 Mich. 578, 589-90, 218 N.W.2d 136, 140-41 (1974); *People v. Morrin*, 31 Mich. App. at 311 n.7, 187 N.W.2d at 438 n.7 (to mitigate a killing which would otherwise be murder to manslaughter generally requires "commission of the killing in a sudden heat of passion caused by adequate legal provocation"). The Michigan Court of Appeals rejected this claim on the ground that there was insufficient evidence presented to show that the petitioner was provoked. The Michigan Court of Appeals noted that the alleged provocation consisted of a mere exchange of verbal insults and observed that words alone do not generally constitute adequate provocation. In addition, the fifteen to twenty-five minute lapse of time between this exchange of words and the petitioner's armed return to the scene was "more than sufficient for a reasonable person to regain control of his passions following such a brief verbal dispute." *Mason*, No. 255423, slip. op. at *2-3 (citations omitted).

The Supreme Court has not decided whether the Due Process Clause requires state courts to give jury instructions on lesser included offenses in non-capital cases. *See Beck v. Alabama*, 447

U.S. 625, 638 n.14 (1980) (holding that the death penalty may not be imposed for a capital offense if the jury was not permitted to consider a verdict on a lesser included non-capital offense that would have been supported by the evidence). Although in *Hopper v. Evans*, 456 U.S. 605, 611 (1982), the Court ruled that a capital defendant is entitled to a lesser included offense instruction when there is evidence to support it, more recently the Supreme Court held that state courts are not constitutionally required to instruct juries in capital cases on crimes that are not lesser included offenses of the charged crime. *Hopkins v. Reeves*, 524 U.S. 88, 90-91 (1998).

The Sixth Circuit Court of Appeals has interpreted *Beck* to mean that "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990) (en banc)); *see also Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002); *Adams v. Smith*, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003). In *Scott v. Elo*, the court of appeals held that a Michigan habeas petitioner who had been convicted of first-degree murder was not entitled to relief because a petitioner does not have a constitutional right to a jury instruction on a lesser included offense in non-capital cases. *Scott*, 302 F.3d at 606. Even in capital cases, there is no constitutional right to a jury instruction if the requested charge does not satisfy the legal definition of a lesser included offense. *See Hopkins*, 524 U.S. at 90-91. By definition, cognate offenses such as voluntary manslaughter do not meet the definition of lesser included offenses because they are "'related and hence "cognate" in the sense that they share several elements, and are of the same class or category, but may contain some elements not found in the higher offense.'" *Williams v. Withrow*, 328 F. Supp. 2d 735, 749 (E.D. Mich. 2004) (quoting *United States v. Colon*, 268 F.3d 367, 373 (6th Cir. 2001)).

Under Michigan law, voluntary manslaughter is the intentional killing committed under the influence of passion or hot blood produced by adequate provocation and before a reasonable time has passed for the blood to cool. *See Foster v. Withrow*, 159 F. Supp. 2d 629, 643 (E.D. Mich. 2001) (collecting cases). In the present case, the evidence established that the petitioner and Weezie had been engaged in a verbal argument, but that no punches or blows had been exchanged between the two men. The petitioner left the scene and returned fifteen to twenty-five minutes later armed with an assault rifle. The claimed provocation in this case was a verbal argument, nothing more. But under Michigan law, words alone generally do not provide adequate provocation to reduce a murder charge to manslaughter. *See Allen v. United States,* 164 U.S. 492, 497 (1896); *People v. Pouncey*, 437 Mich. 382, 391, 471 N.W.2d 346, 351 (1991). Moreover, there was sufficient time for the petitioner to "cool off" and regain control of his passions following this brief verbal dispute. The Michigan Court of Appeals did not make an unreasonable determination of the facts; rather it applied the facts to the elements of Michigan's crime of voluntary manslaughter and found that the instruction was not warranted. A presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records. 28 U.S.C. § 2254(e)(1); *Hardaway v. Withrow*, 305 F.3d 558, 563 (6th Cir.2002).

Another reason the petitioner is not entitled to habeas relief on this claim is because any error in failing to give the requested instruction on voluntary manslaughter was harmless given the jury's decision to convict the petitioner of first-degree murder, even though the trial court instructed the jury that it could convict the petitioner of second-degree murder as a lesser included offense. *See Abdus-Samad v. Bell*, 420 F.3d 614, 628 (6th Cir. 2005) (jury's decision to convict the petitioner of first-degree felony murder even though the jury was also instructed on the lesser-included offense

of second-degree murder "strongly suggests" that the trial court's failure to instruct the jury on the lesser offenses of voluntary and involuntary manslaughter was at most harmless error). Therefore, the petitioner is not entitled to habeas relief on his second claim.

III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt # 1] is **DENIED.**

                                              s/David M. Lawson
                                              DAVID M. LAWSON
                                              United States District Judge

Dated: February 22, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 22, 2010.

                                  s/Teresa Scott-Feijoo
                                  TERESA SCOTT-FEIJOO